Good morning. Mr. Dubois, we meet again. Do you have any insights on arbitration you'd like to share with us? Well, specifically the distinction between, yeah, anything you have to offer would be welcome. Good morning, Your Honors. May it please the Court. My name is Alan Dubois and I represent the appellant in this case, Jason Wheeler. In this case, the District Court made at least four separate procedural errors, any one of which would independently justify a reamend in this case for further consideration. First, the Court failed to take into account the flaws of the Child Pornography Guideline, which has been in large measure repudiated by the courts, disavowed by the Sentencing Commission. And what support do you have that the District Court, it was required to take into account the purported flaws of the sentencing guidelines in this arena? Well, Your Honor, I think it's inherent in the sentencing process laid out by 18 U.S.C. 3553A, where the whole reason that we have guidelines is for an expert body, the Sentencing Commission, to provide guidelines to the Court. Right. And so there's no case law support other than the inherent nature of the statute, correct? No case law support? No, Your Honor. Is there case law support? I would say that both Dorvay and Jenkins both indicate that a court acts at its peril if it declines to at least acknowledge and take into account some of the failings that have occurred not just by the courts, not just by the academics, but by the Sentencing Commission itself. Well, does the Sentencing Commission has the authority to change the guidelines, correct? It does, subject to oversight from Congress. They must, any amendments have to be approved by Congress. And what does the fact that the Sentencing Commission has at least heretofore decided not to leave the guidelines as they are due to your argument? If the authority in this area has not seen fit to change the guidelines yet, why would a district court commit error in not considering the perceived flaws of the guidelines? Well, the error is not in that it must reject the guideline. The error is not that the court must take into account the total context in which the guideline exists. And that exists both in terms of the guideline itself and in terms of its relationship to the 3553A factors. And not to get too bogged down with the guideline issue, I know it occupied a lot of my doorstop of a brief and I apologize for being so long. And do you have any Fourth Circuit authority? Are those Fourth Circuit cases decided? We have Judge Gregory's concurrence in Helton where he both recognized the same similar flaws that the Third Circuit has recognized. I do just, let me just be clear. I share some of the concern that the fact that there is, there are policy reasons to disagree with the harshness of a particular sentencing regime. That has often been the case even with areas like the crack cocaine disparity. I'm not, I'm a little uncomfortable and perhaps you can help assuage that with the assumption that that discomfort imposes an affirmative obligation on the sentencing judge to address those concerns. Well, let me say this. I think the obligation certainly arises where the parties present those flaws to the court for its consideration. And I know the government disagrees with our position that those concerns were squarely presented to the court. Where were they squarely presented to the court? I didn't see them. I think they're most squarely presented in the defendant's sentencing memorandum and on page 98 of the joint appendix where the parties, the very heading of that section is something to the effect that the guidelines are not binding, the court can disagree with the guideline on policy reasons, and then goes on to identify the, several of the enhancements based on the nature of the images possessed, and I believe the number of the images possessed, and show that because of the operation of these enhancements, which the commission itself has, have identified as flawed proxies for culpability, argued to the court resulted in an excessive sentence under the particular circumstances of this case. Although it is within guidelines. It is within guidelines, and in fact the court, it was below guidelines. It was below. And that certainly, so, but to get back to Judge Duncan's question, when a party brings these flaws to the attention of the court, and I guess it's a decision for this court about whether in this particular case that was brought to the court's attention in a full enough fashion, but in a case where the parties bring these flaws to the attention of the court, I believe it is at that point incumbent on the court to address them, to decide, you know, you're right, I believe under the circumstances of this case, though, these flaws do not operate in injustice, or they may say, you're right, I agree that in this case I can't put the same degree of trust in the guidelines as I would in perhaps another more empirically well-founded guideline. Go ahead, I've already asked a question. I was going to ask you to go to your next argument. Oh, I do have one question on, still on this policy consideration, and whether it was even brought to the court's attention, or you, as I understand it, it's these three or four words solely on policy considerations buried in the sentencing memorandum. Was there any mention on behalf, on Mr. Wheeler's part, at the sentencing hearing to the court about these policy issues, or was it left for the court to divine that on its own? I mean, I think in all candor it was not brought, there was some discussion about the harshness of the operation of some of these enhancements, and that they were in tension with the 35-50 rate factors, but I think I can make it, hopefully, maybe a little easier for the court by saying, I don't think the court necessarily even needs to reach this issue about the degree of consideration a court must give if it's brought to the party's attention, because I understand there is, it might be a close call as to whether it was brought to the court's attention in an explicit enough fashion, though I would point the court to this court's decision in Marias, where on footnote six of that case, the government failed to make an explicit identification of the sentencing factors that it felt rendered the sentence unreasonable, and yet the court reached them under Lynn. But anyway, moving away from that, the other three procedural flaws that we've identified all independently argue in favor of remand in this case, and I believe those are all undisputedly preserved and presented to the court. The first is the district court's failure to recognize that there was a sentence disparity between Mr. Wheeler's guideline range and the sentence received by his co-defendant, Mr. Hilliard in Florida, who received a five-year sentence. That was brought up both in the sentencing memorandum and on page 53, I believe, of the sentencing hearing. The district court never once addressed it, and in fact, compounded its error by not comparing Mr. Wheeler to Mr. Hilliard, but by comparing him to a cohort of offenders who were not comparable to him. In passing its sentence and giving the reasons for its sentence, the court noted that the average sentence for cases of this type was 137 months. That sentence length that was identified by the court referred not to defendants like Mr. Wheeler, who had been convicted of receipt of child pornography and who were in criminal history category one, but to all child pornography defendants, both producers and the defendants with much greater criminal history categories. So not only did it not consider the disparity between Mr. Wheeler and his co-defendants, it compared the reasonableness of the sentence to the wrong cohort of offenders. I think that factual error alone justifies a remand in this case. Judge Fox is no longer on the bench, but at least it would allow Mr. Wheeler to be sentenced based on a proper understanding of the universe of defendants to whom he is most comparable. The district court simply made a factual error in its choice of consideration. That was raised to the court, that was preserved, and that justifies remand. The fourth, I guess, procedural error is that the court, the only grounds that the court gave for imposing the sentence that it did were the need for deterrence and a need for Mr. Wheeler to receive needed treatment. Neither one of those is justified by the court's record. Can we just go back a minute? Your argument with respect to the comparator, you have grouped together with your second argument, is that it? Remember, I think one, they relate to each other. I think they can be viewed either as an independent argument that he should have under 3553A, the need to avoid unwarranted disparity, should have addressed the party's argument under Carter that Hilliard was the proper, he needed to compare Hilliard's sentence to the sentence recommended in this case for Wheeler. To avoid unwarranted sentencing. To avoid unwarranted disparity. To at least acknowledge that. To acknowledge the disparity. Second, having failed to do that, it compounded that error by not comparing it to the proper cohort. That had a very significant effect on Mr. Wheeler's sentence because 137 months was the comparator that Judge Fox used. The proper comparator would be the average sentence in 2015 for defendants like Mr. Wheeler was around 80 to 90 months. Essentially, Mr. Wheeler got a sentence twice as long as the average child pornography receiver, like him, and three times as long as that of his co-defendant. With no explanation. With no explanation at all. And it's very difficult to see why that makes any sense because Mr. Wheeler, I mean, you know, I'm probably too close to this case, but Mr. Wheeler is not the worst of the worst. It's hard to see any fact in this case that Judge Fox could have pointed to that would justify a sentence twice as long as the average defendant and three times as long as his co-defendant. But he never even, he never attempted to do so, so we can't now try to guess at what that reasoning would have been. I think, again, that gives a totally independent basis for remanding this case. And again, the final reason is sort of related along the same lines. It's very difficult to see how a 15-year sentence is necessary to deter a non-violent first offender with strong family support who has undergone treatment, whose therapist said he was one of the best patients that he had ever had, that a sentence of 15 years was the sentence that was sufficient but not greater than necessary to specifically deter him from future criminal conduct. As I stated in my category one criminal history defendants, standing alone, just in a vacuum, is something along the lines of 5%. For someone like Mr. Wheeler, I can only imagine it's much, much lower than that. And these are the factors that you present to us to overcome the presumption of appropriateness of a below-guideline sentence. That this is a unique set of circumstances. And I get sort of confused and the lines sort of blur too between the line between a procedural review and a substantive review. I think the easiest way to remand it is on a pure procedural ground that a court is under an obligation to justify a sentence and the court did not do that. The court did take into account, it says, the defendant's history of sexual abuse and the fact that he sought out prepubescent images and not just still images but videos as well. Correct? Well, I think the answer to that is yes. The answer to that is yes. That's the reason for going down the modest amount it did. And I would say that I don't want this modest variance to overshadow the actual absolute length of the sentence, which as I say, was twice as long as the average sentence imposed for a case of this type. And even this variance, which amounted to about a 15% reduction, was still far less than the average variance in a case of this type, which is 40% according to the statistics that we had at our obligation under 3553A. You're saying that this is essentially a very unusual case that should have justified a greater variance, even though he received some. Absolutely. Or at least an explanation for why you didn't. That's really your only case. Because if it had been an explanation of like... I happen to know that his code or his conspirator was a child. There was some explanation. Exactly so. And so we cannot at this point imagine why the court didn't do these things. Well, I actually could. The district court was particularly concerned. You go from someone who had a clean life to someone who is looking at images that involve sadomasochistic acts and bondage. And the court asked several times, is there some way he could have gotten this far inadvertently? He did, the district court did pay particular attention to the circumstances. He did to that one particular circumstance. And I think that the reason he asked that question, Your Honor, is because there's only two of those images in the entire catch. I think I think the record is fairly plain to the extent we know that this was not something that was in his particular area of interest, though there were these two images. Didn't he indicate deception on a polygraph exam? He did, though no one, I think no one either on the government or the judge made too much of it. Really, I think the government maybe mentioned it in passing it sentencing. I think the reason for that is we don't know what that means. They didn't call the polygrapher. We don't know what the deception was. The judge never mentioned it, I don't think, at all in the course of passing sentence. And again, I think it goes to Judge Monsa's point. Had the judge said, I was very concerned by this factor and therefore it outweighs the fact that you've never committed a crime, that you successfully completed treatment, that you have a stellar work history and a supportive family, but he didn't do any of that. Well, but I think my colleague is suggesting that he did seem very interested and did ask a bunch of questions about this kind of child pornography and alerted him, alerted the parties of his interest in whether or not this defendant engaged in it. I mean, I think that's fair. I think he was mailing it. And I thought there was also, I'm sorry. I thought there was also some testimony about him erasing things. Didn't the government witness say something about he'd erased things and so maybe they were these things? I don't recall that. And my government counsel can correct me if I'm wrong, but I don't recall that. But that still doesn't really reach the question of one of the listed 3553 factors, which is to avoid disparities in sentences. And I just think he didn't follow the procedure set out by Carter, which is that when a party raises an issue that is meaningful and substantive, the court must address it, even if it's other grounds for decision would otherwise be reasonable. I have a quick question before you sit down. Is the transcript of the sentencing hearing that is in the record, is that a clean, final sentencing hearing transcript? That may be the reason we can't understand the explanation because this is not a final sentencing transcript in the record. I mean, I hate to say anything out of school. Judge Fox was difficult to understand at the end. His voice got very low and it was difficult for court reporters to perhaps accurately capture. So the answer is yes. This is the final. It's the best we have. Okay. Thank you. I'll reserve the rest of my time, Your Honor. Thank you. You didn't have any rest. What did you say? May it please the court, I'm Barbara Coker on behalf of the government in this case. The first argument this morning began with a comment that the counsel had last been here in 1997. And I found it interesting reflecting on my own appearance here and being here with Mr. Dubois, we actually opposed one another in 1994. It was one of my first oral arguments before the court on whether or not the district court could do mental commitment hearings over video conferencing. I bring that up because it occurred to me that in all these years that have passed and Alan and I have, excuse me, Mr. Dubois and I have opposed one another. I don't think we've ever tried a case together. I don't think we've ever had the opportunity to present a case before a jury to do the closing argument and then to do the rebuttal, as it were. This case makes me, one, very glad, actually, that I had not opposed him in that regard. The brief, I think, was very well written and certainly has persuasive value to it to raise concerns as Judge Duncan has mentioned. However, what stands out about the case is that there is no law in support of Mr. Dubois and the defendant's position in this case. Well, with respect to what? With respect to... First, if we can... You've made five arguments. You've made a bunch of them. All right. Let's go to plain error. Let's begin with the plain error standard. To that point... Well, you have to deal with Carter. All right. So he raises the argument. So I'm not sure that's so far as plain error. Let's turn to Carter then. First, the allegation was made that Mr. Wheeler needed to be compared to Mr. Hilliard. The Fourth Circuit does not. In fact, it's the opposite. Comparing co-defendants or co-conspirators, that's not what similarly situated defendants means. Second of all... Not necessarily. Second of all... Not necessarily, but it could be. Second, the... Well... I don't have a response. Who could be more similarly situated than a co-conspirator? Well, they do the same thing. The difference is, and it was in the record, that Mr. Hilliard received a 5K. And it is very clear that that is apples and oranges pursuant to the court's decisions here. So didn't this defendant offer evidence? But he didn't have any left because Mr. Hilliard had already given him up. I mean, he couldn't give up Mr. Hilliard because Mr. Hilliard had given him up. Well, that is true, Your Honor, but... But that's all... I mean, that's always first in, first out. I mean, that's just... That's just the luck of the draw. The first to plead gets the credit. Mr. Hilliard was the distributor, right? Right. Your Honor, I don't believe that the record supports that fully. Well, who sent the images to Mr. Wheeler for which he was convicted? What I believe the record supports is that Mr. Hilliard was caught first. His emails, I think it's a little bit more generic statement than that, in that Mr. Hilliard's emails indicated contact. So did Mr. Hilliard distribute images to Mr. Wheeler? Your Honor, I would be speaking outside of the record, but although in the public record I have read the sentencing transcript of Mr. Hilliard, I don't know if the court would want me to refer to that. Just... Yeah, no, we would. The sentencing transcript of Mr. Hilliard reflects that in comparison, Mr. Hilliard was a very small player. Wait, the question is, did Mr. Hilliard send images to Mr. Wheeler? Yes or no? And I apologize, I don't know that specific... So you just learned facts that are helpful to you and you try to erase others? My understanding is that it is... it goes both ways. That there isn't just a distribution. Yeah. Mr. Hilliard didn't only provide to Mr. Wheeler. In return, Mr. Wheeler would provide... Well, that was going to be my next question. Okay, so Mr. Hilliard did supply to Mr... likely, they knew each other. Likely, thank you. They don't just... Correct. Correct, I appreciate that. So, all right. So Mr. Hilliard sent images to Mr. Wheeler. In return, Mr. Wheeler may have sent images to Mr. Hilliard. So, how are they not similarly situated? What is apparent in the record is that Mr. Wheeler sent images to more people than just Mr. Hilliard. At the sentencing transcript, page 49, and Judge Thacker gets... I believe it was you that asked a question about the possible deletion of files. It is there in the record that he was... Sorry, that is the wrong page. That he had sent hundreds of emails and asking and receiving... Right, what page was that? Child pornography. I cited page 49, but that was actually a different... He does there talk about deleting the downloaded file. You, who don't want to tell us about this other guy. So, did he delete emails too? I only... You can't represent he didn't. Correct. This could all come out at a sentencing. The government is free to say, no, they're really not. They're not similarly situated. There's no disparity here. The only disparity is one gave assistance and the other one didn't. This man should go to jail for a long, long, long time. Because he's a bad, bad, bad man. And this other person that got a much nicer sentence, he is much less culpable. Again... And the district, if government has evidence to that, district court could rely on that. The department can rely on a less full record. But none of that happened here. And it may have been that the argument as to the... It is true that the argument was made. The statement was made. But the argument was not perhaps robust, particularly in light of the other things that were happening in sentencing. It... The fact that Mr. Hilliard, they believed, was similarly situated. Well, yeah. No, I think that argument... Yes, Your Honor. That is why I said that. Are you suggesting that the government may have made an argument about this and the district court made findings about it? Considered it? That there's some indication that considered it? Your Honor, I rely on the Fourth Circuit case law that would... He knew, but... That would call... That's good. But I'm asking you about this record. And there isn't any indication that he weighed that, is there? The... Not specifically, no. I believe, Your Honor, that overall that the courts looking at the statistic, assessing and imposing a sentence well above the average sentence at that time would indicate that whatever Mr. Hilliard got did not have any effect on the judge. There's a suggestion from his counsel that he looked at the wrong statistics. I disagree with that, Your Honor. The difference is that... In fact, I would say that that was not raised before the district court. To the extent that the second or third argument that defendant would now make is that the problem was compounded by comparing to the wrong cohort, the judge was never informed of that. There was no objection. Well, did they know that the judge was going to use the cohort he did? All right. As a court, someone out of blue comes up with an error, you're not foreclosed. People can't not go to the Supreme Court from us because they didn't notice our error and correct it at the time. It was never argued, right? Your Honor, I do believe that the statistic that the court used was not incorrect. It was, in fact, the median or mean, the average sentence for those convicted of child pornography expenses. Offenses. And part of your argument, I would assume, is that Mr. Wheeler did not only trade images with Mr. Hilliard. Mr. Wheeler was quite prolific in his exchanges with... It wasn't just between he and Mr. Hilliard. It was with he and multiple other people. That's correct. In fact, they also found evidence that he used a password-protected peer-to-peer sharing program, which is one of the higher... It's a child pornography community-based thing. So, yes, their conduct was different to that extent. So the statistic was not incorrect. The statistic that defendant now brings before you is the specific statistic for defendants with a criminal history category of 1. And it just was not... Before the court at the time, he used the average, which is not incorrect. It may not have been the most specific. Going to the plain error standard, the defendant's brief... So the only connection, I'm sorry, between Hilliard and Wheeler really is, in fact, the fact that Hilliard got caught first and gave Wheeler and others that he was trading with up, and then Wheeler, standing on his own, has a whole other set of people that he shares multiple images with. That is true. I cannot even confirm, though, that Hilliard had people other than Mr. Wheeler. Right. The only thing we know is that Mr. Hilliard had some email connection with Mr. Wheeler. And that Wheeler had exchanged with a number of people, including requests for prepubescent images. That's correct. And videos. What would the 5K be equivalent to? What would the 5K be equivalent to? What would the downward departure... How much would that take off of Mr. Hilliard? Mr. Hilliard's 5K. Mr. Hilliard, I believe his guideline range was the same as Mr. Wheeler's. So he didn't just get the benefit of a 5K? I'm just asking, I'm just following up on your question, which I thought was pretty straightforward. How many years is the 5K? I'm trying to find out how much Mr. Hilliard got credit. I'm trying to account for... What did the 5K give Mr. Hilliard? And you're saying it wouldn't have given him the difference between Mr. Hilliard's sentence and the defendant's sentence here. That would have been a huge... I hesitate to speak again from the transcript because what I remember... But you relied on it. But I mean, you told me, you told us that one of the reasons for the disparity was this departure. And if you're going to tell us that, that it would seem to me incumbent upon you to tell us how much of the disparity it accounted for. That was the only reason I was asking. If you don't know, that's fine. I'm not asking you to speculate, but it's a little hard for me to understand why you're relying on something unquantified. Well, I believe that I... Do you understand? I don't know that I do, but I didn't perceive myself to be relying on the transcript. I believe that was Duncan's question. Remember that we're asking about Mr. Hilliard and we're saying the difference between his sentence and this one. And he got what, five years? Yes, Your Honor. Okay. And you said, but he got the acceptance of responsibility. And so we're asking you how much time that, since you brought it up, what Judge Duncan is asking you is how much time did that account for? What did the defendant hear? What was the sentence here? His sentence here was 180 months. So it's... What I can tell you is that this transcript... You don't know. Yes. I mean, either it's a number or you don't know, but I don't understand why this is confusing. Part of it is my reluctance to have mentioned the transcript of Mr. Hilliard's sentence because it is outside the record. But you gave us... You can't use it affirmatively and then not use it if it hurts you. I mean, you... Okay. So you want to strike that answer? Well, Your Honor, it's... I don't have it. What is definitely true is I did not forecast these questions correct. And I do not have it at my fingertips. The sentencing transcript exists. I would love the opportunity to further brief this as it relates to that Florida sentencing transcript. My overall impression of that sentencing transcript was that that court believed Mr. Hilliard... I don't understand. I'm sorry. I really don't understand. It's an argument that Mr. Wheeler made. There is a response to it. And yet no one seems to be able... The district court didn't. The government can't explain it. It surprises me that this is not reflected anywhere in the record before us. That's what I'm surprised by. I appreciate that, Judge Duncan. And I apologize for what may seem as reticence on my part. It is not. The government believes that the Fourth Circuit law itself takes care of this issue and did not forecast the court's concerns. Do you suggest that Carter is no longer good Fourth Circuit law? No, Your Honor. Carter is... I just believe that it would be clear that the comparison to Mr. Hilliard would not have that great weight. So going back then to the plain error standard... Which doesn't apply to this argument. We both know because it was raised for sure. So maybe it's not reversible error, but there's no plain error standard with respect to this argument. The argument about the sentencing disparity was raised. That was squarely presented. It was raised, Your Honor, that the fact that the co-conspirator received 60 months pursuant to a 5K in the state of Florida. Is the pursuant to a 5K in here? It is, Your Honor. In this record? It is, Your Honor. In this case? It is. And that's why I bring up the Fourth Circuit law. Okay. Maybe you can... Where is that? Well, you tell me it's in here. We'll look through it and if it's in here, we'll find it. It is in here, Your Honor. Yes. The defense counsel made very clear that it was... That he understood that it was pursuant to a 5K. No, no, no, no, no, no, no, no. Defense counsel in the sentencing transcript, Your Honor. All right. All right. Yes. I'll find it. Don't worry. Don't you worry about it. Thank you. The government... I do believe that this is a harmless error because of the state of the law. Because it is not a valid comparison to this individual who got a 5K. But that being aside, the court gave very robust reasons for its sentence. Actually, it properly calculated the guideline range. There was no objection in the court to that. I would note... And the robust reasons? He goes quite at length in regard to the... He asked a lot of questions about the nature of the offense and the nature of the characteristics of the photographs and the fact that none of this was inadvertent. It was obviously calculated. It was sort of curious to me that there was no reference to characteristics of the defendant. For example, the questionable lie detector result. It was very focused as to the nature of the files. The court's concern in that regard? Yes. I actually think it goes to the court's concern that he did not want... That was the consideration of whether that guideline range overrepresented the conduct. That he, being the district court, very clearly wanted to have that part right and not sentence him too greatly if the presence of those images had been inadvertent. Upon, I think, four different times the district court asked, could this have been inadvertent? Did he seek them? Was this a mistake? And upon learning that all of that, that it was not inadvertent or a mistake, the court denied the variance on that ground and moved forward with his sentencing. To that extent, the court did consider the specific characteristics of the defendant. He says it very clearly in regard to the motion for downward variant, or not motion, that is, but in the granting of the variance downward. He speaks... I'm sorry, were you... I was answering a question. You're... The 5K discussion at the sentencing transcript, I see one place where 5K is mentioned, and maybe this isn't where you were talking about, but defense counsel says we would urge you to consider something that is close, closer to what Mr. Hilliard got in Florida. I understand you don't have a 5K motion in front of you. Is that what you're referring to? I... When you said that defense understood that there was a 5K motion in the other, and that the court understood that, I would be unable to... But is that what you were... Hang on. That's all she's asking you. I don't recall, Your Honor, if there is a second mention of the 5K in the transcript. Because in the PSR, it doesn't say anything about it. And it talks about the 60 months custody and the five-year supervised release, but it doesn't say anything about the 5K. So I was trying to look at it for two. All right. Sorry. Judge Duncan has a question. No, I think it was Judge... I don't know. I was asking her question. All right. I, again, would relish the opportunity to provide the court the specific citations to the transcript in regard to the knowledge that the court would have had in regard to the 5K, but believe that the Fourth Circuit law is clear, regardless, that given the context of the sentencing, that that at worst was harmless error and would not have affected the sentence imposed in this case. We do ask that you affirm the sentences imposed by the district court. Okay. Thank you very much. Your Honor, I just may even make two or three real quick points. I don't recall, and I could be wrong, but I don't recall there's anything in the record other than the... The reference of 53. ...about a 5K. It's not in the PSR. And the government's also mentioned that they didn't respond because there was some case law in the Fourth Circuit that said it was impermissible or improper. Can you talk just a tad louder? Oh, I'm sorry. The government mentioned something about they didn't respond to this argument because there's no... There's case law that says that that's not a proper comparison. They've not made that argument anywhere in this brief or below. I would argue that that is raised. I'm not familiar with the case law they're referring to. Wait. As I understood that case law, I said the court isn't required to, not that it's forbidden to. I would also note that in Zook, where it was the other way, the court did compare the defendant's very low sentence to the average sentences received by other comparable defendants. And again, finally, I would disagree with the government's argument that the court's use of the 137-month mean sentence for all child pornography defendants was proper. Contrary to what the government argued, the only difference is not just that it includes people of all criminal history categories. It also includes... That number also includes child pornography producers. Very much more serious class of defendants than Mr. Wheeler. The cohort that I identified in our brief, I think, is much more comparable. Bottom line, Your Honors, all we're asking for is a chance to have our arguments addressed, to make our arguments in front of the court. I am very confident that if we get a procedurally proper hearing, that we will get a favorable sentence. I'm not afraid of a remand on procedural grounds, because I do think if a court looks at the factors that Carter says it's supposed to look at, 35A says it's supposed to look at, that Mr. Wheeler's sentence will be different than it is. The errors here were not harmless. They were, in fact, very, very significant. He ended up with a sentence twice as high as the average defendant, three times as high as Hilliard, and we would simply ask for a remand, simply so that we can have a chance to present all this and have a court consider it in the manner that it's required to by law. Thank you, Your Honor. Thank you very much. We will ask the clerk to adjourn court and come down and greet the lawyers. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Allyson K. Duncan, Stephanie D. Thacker